*Northern District*
No. 8110
**MENOTOMY REALTY CORP.**
v.
**AUBREY FRENCH, STEPHEN
DAVICHICK, ERNEST R. MENELLY,
RUSSELL P. MENELLY &
HENRY F. MENELLY**

Argued: Nov. 29, 1973 - Decided: June 7, 1974

*Present:* Cowdrey, P.J., Bacigalupo, & Flynn, JJ.

Case tried to *Artesani, J.* in the Third District Court of Eastern Middlesex. No. 1596 of 1969.

**Flynn, J.** This is an action in contract and tort for damages arising out of a lease given by the plaintiff to the lessees and their assignees. In counts one and two the plaintiff seeks to recover certain charges for 1968 for increased real estate taxes, snow removal, taxes on signs as in the lease, and rent for October and November of 1968. In Counts three and four, recovery is sought for damage to the property caused by the defendants Menelly, hereafter referred to as the lessees, and by the defendants, French and Davichick, hereafter referred to as the assignees.

The defendants pleaded a general denial and certain other defenses not material to the issue before us.

The court found for the defendants on all counts.

**At the trial there was evidence tending to show that** the plaintiff leased the premises at 1054 Massachusetts Avenue, Arlington, to the lessees on July 1, 1965, for a laundermat for two years with an option for three more years, and on August 1, 1966 the lessees assigned the

lease to the assignees with the consent of the plaintiff. The assignment by its terms incorporated the lease by reference and under the assignment both the lessees and the assignees were to be responsible to the plaintiff for the lease. Under the lease there were certain charges for increased real estate taxes, snow removal, and taxes on business signs; such charges for 1968 amounted to $425.32, and were not paid by any of the defendants.

**There was also evidence tending to show that** the option to renew was not exercised and that the rental was $110.00 per month from approximately August of 1967. Further, that the lessees did many things in the operation of the laundermat such as making vents, removing sink, hopper, and bathroom walls for more machines, securing machines into the floor by making holes in the floor, and storing old machines and various articles down cellar in the laundermat. The plaintiff's president and treasurer had a store in the same block and observed these changes and made no protest concerning the addition of machines. The assignees took over the premises in this condition from the lessees and did not add any more machines or make structural changes. The machines overflowed on occasion and the plaintiff complained of this to the assignees. The assignees moved out on October 30, 1968, and none of the defendants restored the bathroom to its 1965 condition, nor did they re-

move the debris from the cellar, nor make any other structural repairs to the premises. A security deposit of $100.00 was paid and never returned and the defendants did not pay the rent in October and November 1968.

The lease and assignment were introduced into evidence by the plaintiff.

**There was further evidence that** the lessees did many things to damage the property while they were tenants and that the fair value of the property before the lease was $10,000.00 and upon vacation of the premises it was $7,500.00. There was also evidence presented by the plaintiff's expert as to the cost of fixing or replacing each of the specific items damaged.

At the close of the evidence and before final arguments the plaintiff filed 21 requests for rulings most of which were either denied or if granted ruled to be immaterial in view of the Courts findings of fact.

The trial court found that the original lessees were the defendants Menellys, and that this lease expired on June 30, 1967; that there was no direct evidence that they caused any damage; that the Menellys were not liable for anything after June 30, 1967 [the date the lease expired] and, therefore, not liable for charges alleged in 1968 or for rent in 1968.

The court further found that the nature of the business (laundermat) called for certain security, bolting machines, and overflow at

times of soap and such, but that there was no damage caused to the premises beyond reasonable wear and tear and use of the premises. The court also found that there was no lease in effect in 1968, and that the assignees were not liable for the charges that were outlined in the lease and which were incurred in 1968; that they owed rent for the month of October for which the security deposit could be applied; that there was no evidence that the store was vacant during November 1968.

The plaintiff claimed to be aggrieved by the disposition of all its requests for rulings.

A recitation of each of the plaintiff's requests and the disposition thereof would serve no useful purpose, but upon careful perusal of them we find that collectively they raise three issues to be determined.

The *first issue* is whether or not any or all of the defendants as a matter of law are liable for increased real estate taxes, snow removal, and taxes on a business sign for the year 1968, or a total of $425.32. The *second issue* is whether or not, upon the evidence reported, a finding that the defendants were not liable for damages to the premises occasioned by their use, reasonable wear and tear excepted, was warranted. The *third issue* is whther or not a finding waes warranted that none of the defendants were liable for rent totalling $220.00 for the months of October and November 1968.

■ With reference to the *first issue,* the lease, the terms of which were incorporated into the assignment, did contain a provision that the "lessees do hereby both individually and as a firm, covenant with the lessor that during said term and for such further time as *they or any other person or persons claiming under them shall have the premises . . . . ."*

The assignment contained a provision that the "lessees assent and agree that they shall continue liable upon the lessees' covenants under the said lease" as well as a provision that "the assignees shall assume and agree to pay, perform and observe the covenants of the said lease to be paid, performed and observed by the lessee."

Although the trial court found that the lease expired on June 30, 1967, and that therefore, none of the defendants were liable for charges incurred in connection with the property after that date, (with exception of the assignees being liable for rent which the court found was paid up and that nothing was due from them), this finding is contrary to the terms of the lease and the assignment and the report is barren as to any other evidence to support it.

■ It has been held that where a tenant holds over after the termination of a lease that the fair inference from the conduct of the parties is that they impliedly agree to a tenancy on the same terms and conditions as that of

the prior tenants. *Cairns* v. *Giumentaro,* 339 Mass. 675. *Leavitt* v. *Maykell,* 203 Mass. 506. *Benton* v. *Williams,* 202 Mass. 189.

By occupancy subsequent to the initial term of a lease and the payment of rent under an agreement for and with a right to its renewal, the lessee, *or any person or persons claiming under them,* becomes a tenant at will at the same premises with all the rights and privileges that has been annexed to them and upon the terms and conditions specified in the written lease except so far as modified by mutual arrangement. *O'Brien* v. *Hurley,* 331 Mass. 172. *Witt* v. *Commercial Hotel Co.,* 253 Mass. 564 at 570. *Boudreau* v. *Johnson,* 241 Mass. 12.

We hold, therefore, that all of the defendants, that is, the lesees and the assignees, (the terms of the lease having been incorporated into the assignment) are liable jointly and severally under the covenants of the lease relating to increased real estate taxes, taxes on the business, and for snow removal or a total of $425.32.

With reference to the *second issue* there was no evidence reported that would warrant the finding that the defendants were not liable for damages to the leased premises and the finding on Count 3, which was a count against all the defendants for damages to the plaintiffs' property, should have been for the plaintiff.

The lease contained a provision that "the lessee's will keep the premises in such condition as the same are in at the commencement of the term of the lease" and another provision that "the lessee's or its agents would leave the premises in the same condition as the same were at the time of the original entry, ordinary wear and tear excepted."

In *Cawley* v. *Jean,* 218 Mass. 263, a covenant in a lease was to the effect that the "lessee will deliver up the premises to the lessor at the end of the term in as order order and condition ..... as it was at the beginning of the term." Such a provision was upheld and the provision in the lease in the case at bar appears to be a more stringent one than the one in the Cawley case.

In the instant case, the evidence reported (with no evidence to the contrary reported) indicated not only that the above covenants were breached by the defendants but further that there was damage sustained to the premises in the amount recited.

Even though the trial justice found that there was no direct evidence that the defendants Menelly had caused any damage, and that there was no damage caused to the premises beyond reasonable wear and tear and use of the premises, there is nothing in the evidence reported to permit us to sustain these findings as being warranted.

While the findings of the trial justice may not be reversed if there is any evidence to sustain them, yet, such findings will be reversed by an Appellate Division and contrary findings made by that Division, where the facts are uncontroverted and there is no reported evidence or inferences which warranted the finding of the trial justice. *Morville* v. *Villemaire,* 45 Mass. App. Dec. 132.

Furthermore, the court's findings of fact are not a part of the trial record and must be supported by reported evidence. Any such reported evidence must appear in the Summary of Reported Evidence, as is outlined in the model report included within Rule 28 of the Rules of the District Courts (1965), unless it is included, under the recent case of *Olofson* v. *Kilgallon,* 1973 Advance Sheets 85, as evidence reported with the trial justice's findings of fact. Findings as such, however, can not supply evidence which the report lacks (*Pettinella* v. *Worcester,* 39 Mass. App. Dec. 7) unless it is clear, under *Olofson* that the justice intended that his findings should be treated as both a Summary of Evidence and as Findings of Fact. Such is not the situation in the case at bar. Although the trial justice specifically preceded his findings of fact with the information that "there was evidence that...." none of the evidence then recited, which largely duplicated the evidence previously summarized

in the report, would warrant the findings that the trial justice then proceeded to make.

▇▇▇▇ The report contained the statement "this report contains all the evidence material to the questions reported." We are not at liberty to assume that there was any evidence more favorable to the defendants then that which is contained in the report. *Buckley* v. *Railway Express Agency,* 323 Mass. 448.

As was stated in the case of *Coco* v. *Lenvest,* 37 Mass. App. Dec. 97, "this points up the necessity of vigilance on the part of the appellee's counsel to insure that the report contains all of the includable material which tends to support the findings in his favor. Although the appeal is cast in the form of a report by the trial justice, it nevertheless remains a part of the adversary process by which cases are decided. The trial justice should not be placed in the position of having to become a protagonist for the prevailing party once there is an appeal from his finding. He should be entitled to rely on the appellee's counsel to see to it that the report contains all the evidence material to the question reported." See also *Schraeder* v. *Assembled Homes, Inc.,* 28 Mass. App. Dec. 195.

On the other hand, Count 4 alleges a criminal act upon the part of the defendants (i.e. G.L. c. 266, § 104 — willful destruction of a building) and that as a result of said conduct certain damage occurred. There was no evidence

to indicate criminal conduct on the part of any of the defendants and the trial justice was correct in finding for them on this count.

With reference to the third and last issue, as to whether or not the defendants are liable for rent for the months of October and November, 1968, the trial justice should be sustained in his finding that there was nothing due the plaintiff for these items. He found as a fact on the evidence reported that the security deposit was applied to the October rent and there was no evidence that the premises were vacant in November after the assignees had vacated on October 30, 1968. His findings in this regard should not be disturbed. *Himelfarb* v. *Novadel Agene Corp.,* 305 Mass. 446. *James B. Rendle Co.* v. *Conley & Daggett Inc.,* 313 Mass. 712.

Findings of fact of a trial justice are not reviewable by an Appellate Division when there is evidence to warrant such findings. *Huikari* v. *Eastman,* 35 Mass. App. Dec. 95, at 103.

Consequently, the findings on Count 1 and Count 2 (these counts were for charges for increased real estate taxes, sign tax, snow removal and two months rental) should have been for the plaintiff in the amount of $425.32 on each count (with but one satisfaction) and not for the $645.32 as sought by the plaintiff.

We, therefore, conclude that the findings for the plaintiff on Counts 1, 2 and 3 are to be vacated and a finding is to be entered for the

plaintiff on Counts 1 and 2 in the amount of $425.32 (with but one satisfaction for both counts) and a finding also is to be entered for the plaintiff on Count 3.

Although the uncontradicted evidence reported indicated that the damage attributable to the defendants amounted to $2,500.00 the trial court is not required to accept testimony even if uncontradicted. (*Daniel* v. *Jardin*, 320 Mass. 764. *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205.) On the other hand, mere disbelief of testimony is not the equivalent to proof of facts to the contrary. *Zarillo* v. *Stone*, 317 Mass. 510. *Boice Perrine Co.* v. *Kelley*, 243 Mass. 327. We do not feel that the Appellate Division can properly substitute its judgment for that of the trial justice on the question of damages on Count 3 and accordingly the case is remanded on this question only.